**20 So.2d 363**

### RUDMAN v. DUPUIS.

No. 37004.

Nov. 6, 1944.

Rehearing Denied Dec. 11, 1944.

Voorhies & Broussard, of St. Martinville (Cullen R. Liskow, of Lake Charles, of counsel), for defendant-appellant.

Guidry & Willis, of St. Martinville, for plaintiff and appellee.

HAMITER, Justice.

The dispute presented by this litigation concerns the distribution of oil royalties due and to become due under the terms of an oil, gas and mineral lease affecting a tract of la: ' having an area of 3¾ arpents, located in St. Martin Parish. Pending a

settlement of the suit, the lessee is withholding their payment.

On March 7, 1939, in the capacity of owner, defendant Leon J. Dupuis, encumbered such tract with the mentioned lease, executing it in favor of Stanolind Oil & Gas Company. The instrument contained the usual provision that the lessee would pay royalties on oil of one-eighth of that produced and saved from the land.

Some months later, specifically on July 24, 1939, the said defendant sold to Robert Sonnier, by warranty deed, a small lot or parcel carved from his 3¾ arpents of land. The part thus conveyed contained approximately .162 arpents, and it is referred to hereinafter as the small tract. Remaining to that vendor was what we later term the large tract, estimated to have an area of 3.588 arpents.

Inserted in the deed conveying the small tract was the following provision:

"The parties take cognizance of the fact that the property herein sold is subject to a gas, oil and mineral lease executed by the vendor to Stanolind Oil and Gas Company. It is understood that all delay rentals due according to the terms of said lease is reserved to and shall belong to the vendor. All gas, oil and other minerals, however, as well as all royalties and other avails and benefits under said lease are sold hereby and passed with the land and shall belong to the purchaser, his heirs or assigns."

On July 23, 1940, defendant Dupuis executed an instrument evidencing the transfer to Hines C. Laughlin of "the undivid-

ed two-eighths (2/8ths) of the one-eighth (1/8th) fractional part of the minerals and royalties in, on, or under" the above mentioned 3¾ arpents of land (it will be remembered that the small tract of .162 arpents had previously been carved therefrom and sold to Sonnier). Subsequently, one-half of the interest so obtained by Laughlin was acquired, through mesne conveyances, by plaintiff, Rose Rudman, the date of her deed being September 27, 1940. Also, on the last mentioned date plaintiff acquired, through Robert Sonnier, "the whole of the oil, gas and other minerals of every kind and description in, on or under" the small tract of .162 arpents.

Meanwhile, under its lease of the entire 3¾ arpents, the Stanolind Oil & Gas Company commenced and carried on operations for the search of oil. Only one well was drilled, the location thereof being on the large tract. An oil producer, completed on September 19, 1940, was the result of the drilling. Of the oil produced from this well, the one-eighth portion (royalty) due to the lessor or his assigns under the terms of the lease is that over which this dispute arose.

In her suit, plaintiff contends first and primarily that the deed from Leon Dupuis to Hines C. Laughlin, of date July 20, 1940, conveys two-eighths of the oil royalties payable under the terms of the lease; and, since she acquired through mesne conveyances one-half of Laughlin's interest, she demands to be recognized as the owner of one-eighth of the one-eighth royalties, or one-sixty-fourth of all oil produced from the leased land. Defendant, on the other

hand, insists that his deed to Laughlin conveyed only two-eighths of one-eighth of the one-eighth royalties, or two-five hundred twelfths of the total production, of which plaintiff acquired an undivided one-half.

Plaintiff's second demand is for other royalties, additional to those mentioned above, by reason of her acquisition of the whole of the oil, gas and other minerals in and under and that may be produced from the small tract of .162 arpents. The defense to this is that no oil is being produced from the small tract.

The trial court decreed meritorious the first demand of plaintiff, and, accordingly, rendered judgment recognizing her to be the owner of one-eighth of the royalties payable to the lessor or his assigns, or a one-sixty-fourth royalty interest. Her other demand, however, was non-suited, this because of an insufficiency of pleadings and evidence to sustain it.

Defendant is appealing. In an answer to the appeal, plaintiff asks an amendment of the judgment only to the extent of recognizing her as the owner of the additional royalty interest covered by the second demand which was non-suited.

It is conceded that plaintiff owns one-half of whatever interest Laughlin acquired from Dupuis under their deed of July 20, 1940. But whether such acquired interest was two-eighths of Dupuis' one-eighth royalties (being one-thirty-second of all oil produced), or was two-eighths of one-eighth of the one-eighth royalties (amounting to one-two-hundred fifty-sixths of the whole), depends upon the proper in-

terpretation to be placed upon the agreement of those persons. As before shown, their instrument recited the conveyance of "an undivided two-eighths (2/8ths) of the one-eighth (1/8th) fractional part of the minerals and royalties in, on or under" the 3¾ arpent tract.

From a casual reading of the granting clause, and considering that at the time of the deed's execution the land was encumbered with a lease, it would appear that the parties intended by it a transfer of two-eighths of Dupuis' share in the proceeds of the lease. His share or portion (royalties), under the terms of the lease, was a one-eighth fractional part of the entire production. But on a close study of the provision it can be said that possibly there was contemplated a conveyance as contended for by defendant. Such a conclusion could be reached by treating the clause as transferring *"two-eighths* of the *one-eighth* fractional part *of the* minerals and [of the] *royalties* [one-eighth] * * *." (Brackets and italics ours.)

Thus we are confronted with a provision which is fairly susceptible of two constructions. It is uncertain, ambiguous. And no other stipulation in the deed provides an explanation of it. Therefore, under these circumstances, the intention of the parties can be ascertained only by a consideration of evidence dehors the instrument, a course pursued by the trial judge.

When extrinsic evidence was offered for the purpose of explanation, defense counsel objected to its admission, urging that it would effect the creation of a contract different from that which the parties re-

duced to writing. In our opinion the objection was correctly overruled. We appropriately said in Holloway Gravel Company, Inc., v. McKowen et al., 200 La. 917, 9 So.2d 228, 232, that:

"It is elementary that in the execution of deeds and like instruments the intention of the parties must be gathered from an inspection of the instruments without the aid of extrinsic evidence, but if the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in its construction. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S. W. 1101, 17 A.L.R. 148."

Offered as a witness was Mr. J. Gilbert St. Julien, an attorney-at-law of Lafayette, Louisiana, who prepared the instrument for execution and who has no interest whatever in the controversy. He testified positively that, according to his understanding of the agreement, Dupuis intended to convey to Laughlin two-eighths of the one-eighth royalties, or a one-thirty-second of the entire production from the tract. In detailing the circumstances surrounding the deed's preparation, he said that Laughlin and Dupuis came to his law office about eleven o'clock of the morning of Saturday, July 20, 1940. As the office's closing time on that day was noon, he was compelled to act hurriedly. The parties, with Laughlin as the spokesman, represented to him that previously an undue advantage had been taken of Dupuis by two persons named Breaux, the latter having obtained from Dupuis, without payment of adequate consideration, a deed conveying

five-eighths of the one-eighth royalties; that Laughlin could, and had agreed to, obtain an annulment of that deed; and that for such assistance and service he, Laughlin, was to be assigned two-eighths of the one-eighth royalties, being a part of that to be recovered from the Breauxs. Simultaneous with his dictating the Laughlin deed, and in order to provide protection to Dupuis in the transaction, Mr. St. Julien also dictated, and both parties signed, a counter letter or statement which reads in part as follows:

"Now, the said purchase being a conditional sale, whereby if the five-eighths (5/8ths) fractional part of the one-eighth (1/8th) royalty sold by said vendors at a prior date by a prior act unto Johnnie Breaux and Adam Breaux, should not be annulled and rescinded and invalidated, then in said case, the sale by Leon Dupuis and his wife, to be null and void."

(Note: This counter letter was not placed of record until after Laughlin passed title to the part acquired by plaintiff.)

Futhermore, the attorney, when drafting the documents, significantly "warned Dupuis that if he allowed that act to be recorded without the withdrawal or annulment of the prior sale to the prior parties that he'd be almost wiped out of his royalty entirely * * *."

In the record also is the testimony of the defendant Dupuis, but it is confused and of little assistance to us. Contradictions appear throughout it, this, obviously, because of his unfamiliarity with fractions.

From the extrinsic proof furnished and above discussed, especially from the testimony of the attorney who prepared the disputed deed, from the signed counter letter, and from the executed oil and gas lease, we conclude, as did the trial judge, that plaintiff should and must be recognized as the owner of one-eighth of the one-eighth royalties, or a one-sixty-fourth royalty interest.

Moreover, we agree with the holding that plaintiff's second demand—that for additional royalties because of her mineral ownership respecting the small tract—should be non-suited. The evidence adduced is extremely meager and insufficient to sustain it.

The judgment appealed from is affirmed.