YELVERTON, Judge.
This is a suit by the builder against the owner for the balance due on a construction contract, and a reconventional demand by the owner for the costs of replacing certain defective work. The trial court found that both parties proved their demands; however, the costs of replacing the unsuitable materials which the contractor placed into the building more than offset the principal demand. Judgment was accordingly granted in favor of the owner on the reconvention and the builder appealed. We affirm.
Most of the arguments raised on appeal rest on one premise: the contention that the trial court erred in finding that the floors of the building were not constructed in accordance with the contract and in a workmanlike manner.
The facts are: Picard Building Corporation agreed to build an eight-unit apartment house for the owner, Joseph N. Tramonte, in Cameron Parish at Holly Beach on the Gulf of Mexico. The agreed price was $68,000. It was understood that the plans and specifications for the new construction were to be identical to those employed in the construction of a four-unit apartment building at Holly Beach under another contract between these parties one year earlier. The plans for construction of the floors of the earlier four-unit building called for an underlayment of plywood beneath the vinyl. In the eight-unit building the builder substituted tempered particle board. The substitution of particle board for plywood is what caused the problem.
The floors of the new apartment house began to swell and buckle soon after its completion. This was apparently caused by the effect of coastal humidity on particle board. The owner never experienced any problems with the floor of the older apartment house using plywood underlayment. The trial court found that the substitution of particle board was an unauthorized departure from the plans and specifications; the use of particle board was what caused the buckling and swelling of the floors; and this constituted unworkmanlike performance of that portion of the contract.
These factual conclusions are supported by the record. The builder admitted that he substituted the particle board because plywood prices were too high. The owner objected to the use of particle board from the outset and only grudgingly consented to its use after numerous assurances by the builder that particle board was of equal reliability. Although it appears that the builder honestly believed that the substitute was of equal serviceability, the facts show otherwise. The difference in result between the two types of floors in the same locality, one using plywood and the other particle board, was taken by the trial court as sufficient proof of the unsuitability of particle board as underlayment in that climatic area. We cannot say this finding of fact was clearly wrong.
Appellant contends that the trial court failed to give proper consideration to the rule that a party proceeding against the contractor who has substantially performed a construction contract, bears the burden of proving both the existence of the defects and the costs of repairing or finishing the defective work. Foster v. Jackson, 339 So.2d 865 (La.App. 3rd Cir.1976), writ denied 342 So.2d 218 (La.1977). It is clear from the trial court’s written reasons that the owner was held to the proper burden of proof. The builder sued for the balance of $8,200 which the owner had refused to pay because of the defective floors. There was no question that the building was substantially completed and that the $8,200 balance owed on the contract was unpaid. The owner’s proof of his reconventional demand clearly met his burden of showing the floors were defective. Also, the owner produced evidence to prove the cost of replacing the vinyl floor, as well as the contract price for taking up and replacing the underlayment. These costs substantially exceeded the $8,200 due on the main demand but were within the $15,000 demanded on reconvention. However, the trial court limited the award in the reconvention to the amount required to offset the main demand. This was done because reconvenor’s estimates were based on the replacement of the un- *1153 derlayment by a thicker plywood than the original plans called for and there was no proof of the exact difference in cost of materials. Because the court was satisfied, based on the evidence, that the replacement cost was at least $8,200, judgment was granted to reconvenor in that amount in the form of an offset. Thus, the trial court held reconvenor to his burden of proving the defect and the cost of replacement.
Finally, appellant contends that the trial judge erred in failing to award attorney fees against the owner for his default in payment of the balance under a provision in the contract providing for reasonable attorney fees and costs in favor of the party who has to hire an attorney for “enforcement of this contract.” We conclude that the trial court correctly denied attorney fees and costs to the contractor because the contractor’s claim was ultimately found to have been offset entirely by the amount required to perfect or complete the work. We are familiar with the cases of Snow-White Roofs, Inc. v. Boucher, 182 So.2d 846 (La.App. 4th Cir. 1966) and Rapides Const., Inc. v. Gaspard, 411 So.2d 81 (La.App. 3rd Cir.1982) which held that a contractor was entitled to recover contractual attorney fees where there was substantial performance, where the contract provided for attorney fees, and where the amount due the contractor was only partially offset by the sum required to cure certain unworkmanlike defects. These cases are distinguishable from the instant facts because in the instant case the amount found due to the contractor was entirely offset by the sum required to cure the unworkmanlike defects. In the instant case the party victorious in enforcing the contract by suit was the owner, not the builder. The trial court awarded attorney fees to neither. Only Picard has appealed. We find no error.
For the reasons assigned, the judgment appealed from is affirmed at appellant’s costs.
AFFIRMED.